UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


JAMES M. BOSHEARS,
   PLAINTIFF

VS.

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,
   DEFENDANT

CASE NO. 1:07CV0447
(DLOTT, J.)
(HOGAN, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff filed his application for Disability Insurance Benefits and Supplemental Security Income in April, 2003. His application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) in January, 2005 at Cincinnati, Ohio. Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), Penny Carr. The ALJ reached an unfavorable decision in May, 2005 and then Plaintiff processed an appeal to the Appeals Council, which denied review in April, 2007. Plaintiff then filed his Complaint with this Court to seek judicial review of the final decision of the Social Security Administration.

## STATEMENTS OF ERROR

Plaintiff lists issues for consideration rather than statements of error. However, we read his brief as saying that the ALJ erred by concluding that substantial evidence supports the proposition that Plaintiff has the capacity for substantial gainful employment. Plaintiff also believes that the ALJ erred by affording undue weight to the opinion of a paper reviewer at the

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. §405(g), Michael J. Astrue is automatically substituted as the Defendant in this civil action.

expense of an examining, but non-treating psychologist. The third error cited is the failure of the Appeals Council to remand his case for the consideration of new evidence.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that he was a high school graduate, divorced from Loretta Lyn Boshears, and living with his parents. He described himself as right-handed, 5'6" tall and weighing 130 lbs. Prior employment was as a computer technician at Tek Systems, where he installed and serviced computers. He also worked in sales positions at Radio Shack and Computer City. Plaintiff states that he suffers from constant neck and back pain and also finger pain. The left finger pain is worse than the right. Plaintiff rated his pain as a "seven or eight" on a ten-point scale. He takes Ultram when he "hurts so bad I can't take it no more." He generally takes Advil three times per day because he doesn't like the side effects of Ultram. He is able to drive, but seldom does, and spends most of his time in his room. He is not able to seek medical help because he has no insurance, although he consulted a psychiatrist on two occasions when he was married. Dr. Shih prescribed Wellbutrin and Lexapro, two medications which had dramatic side effects.

Surprisingly, Plaintiff did not testify about, nor was he asked about, how and when the injury to his neck occurred, although the medical record clarifies this point. (Tr. 309-340; 355-356)

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The VE was asked to assume that Plaintiff had the residual functional capacity to perform medium work (lift 25 lbs. frequently and 50 lbs. occasionally); frequently handle; sustain simple one or two-step tasks; and perform repetitive tasks, but not at a constant pace. He also has a diminished ability to attend and concentrate; may have difficulty accepting criticism; and should have minimal contact with people. The VE responded that Plaintiff could not return to his past relevant work, but could perform the jobs of machine operator, janitor/cleaner and laundry worker at the medium exertional level or inspector/tester/grader at the light exertional level and

2

surveillance system monitor at the sedentary level. All jobs were plentiful in the national economy.

The ALJ's second hypothetical asked the VE to assume the accuracy of Dr. Deardorff's report. The VE responded that Plaintiff would be disabled if Dr. Deardorff's report were accepted as accurate.

The third hypothetical asked the VE to assume the accuracy of Plaintiff's testimony. The VE responded that Plaintiff would not be able to hold any jobs. (Tr. 341-355).

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff suffers from depression and bilateral hand pain, both of which are severe. The ALJ found that Plaintiff had the residual functional capacity to lift 50 lbs. occasionally and 25 lbs. frequently, to frequently handle and finger, to understand, remember and carry out simple instructions of one or two steps, and to perform repetitive tasks, but should have minimal contact with others. Because the ALJ found that Plaintiff could perform a limited range of medium work, he was not disabled and not entitled to share in the Social Security fund. (Tr. 21).

## THE MEDICAL RECORD

Plaintiff saw Ronald Savignano, D.C., a chiropractor, after being injured in an industrial accident in April, 1996 when a co-employee dropped a 7-10 lb. box from a ten-foot ladder onto Plaintiff's head. Plaintiff complained of severe headaches, neck pain and stiffness. Dr. Savignano's diagnosis was "severe cervical and thoracic sprain/strain." The prognosis was "guarded" and the treatment plan consisted of manipulations, hydrocollator therapy and electrical stimulation. (Tr. 130-131).

Plaintiff saw Martin Fritzhand, M.D. in February, 1998. Dr. Fritzhand found that Plaintiff had "significantly reduced" range of motion in his cervical spine. X-rays and an MRI were normal. Plaintiff reported having headaches 70% of the time and sometimes being

3

disoriented and nauseous. There was no evidence of cervical radiculopathy. Dr. Fritzhand described Plaintiff's impairment as a "permanent partial impairment to the whole body of 12%." (Tr. 132-133).

Plaintiff took the Mini-Mental State Examination (MMSE) in February, 2003. He scored a 19, which indicates moderate (very close to mild) severity of cognitive impairment. (Tr. 143). Records from the Burlington Family Care Center in Ashland, Kentucky show that Plaintiff complained of chronic neck, back and right wrist pain. Ultram, a muscle relaxer, makes him "lose his thoughts," so Vioxx was tried. In February, 2000, Joshua Trujillo. M.D. reported that Plaintiff's back and neck pain was improving. (Tr. 145-167).

In February, 2003, a CT scan of the head showed a "high density subcutaneous mass of the right frontal scalp, most likely representing a sebacceous or epidermal inclusion cyst, but was otherwise normal. (Tr. 168, 170, 196). X-rays of Plaintiff's hands showed no fractures, dislocations or acute abnormalities. (Tr. 169 and 171). Plaintiff began to develop short-term memory loss.

Plaintiff saw Sid Shih, M.D., a psychiatrist, on two occasions in May and June, 2003. Dr. Shih's diagnosis was major depression. Dr. Shih found that Plaintiff had intact recent memory, but deficient recent and remote memory as well as deficient judgment, insight and the ability to concentrate. (Tr. 230-232).

S. Douglas Deitch, M.D. is a neurologist who saw Plaintiff in May, 2003 for hand pain. Dr. Deitch reported that nerve conduction studies were normal. Dr. Deitch prescribed Gabitril for neuropathic pain modulation and recommended neuropsychological testing. (Tr. 295).

Plaintiff was examined by Paul Deardorff, Ph.D., a clinical psychologist, in July, 2003. Dr. Deardorff agreed with the diagnosis of major depression and assigned a GAF of 45. He found that Plaintiff appeared anxious and depressed. Dr. Deardorff found serious impairments in all work-related mental abilities. His ability to relate to others, including fellow workers and supervisors is seriously impaired, as is his ability to understand, remember and follow instructions. He could, however, understand simple instructions, but he would have difficulty remembering them. Dr. Deardorff also found Plaintiff's ability to maintain attention, concentration and persistence to be seriously impaired, as is his ability to withstand stress. (Tr.

4

236-241).

Plaintiff was treated at Mercy Franciscan Hospital in July, 2003 for chronic back pain. He was prescribed Ultram and Flexeril by Howard Bialick, M.D. (Tr. 247).

Carl Tishler, Ph.D., a clinical psychologist, evaluated Plaintiff in September, 2003. Plaintiff was again diagnosed with major depressive disorder. Dr. Tishler found that Plaintiff had a moderate impairment of his ability to maintain concentration, persistence or pace, but mild impairments relating to performing the activities of daily living and maintaining social function. Dr. Tishler raised two credibility issues. Plaintiff claimed to have no friends, yet a friend drove Plaintiff to his session with Dr. Deitch. Although Plaintiff repeatedly complained about his inability to remember, his memory was consistent with his full-scale IQ of 78. Douglas Pawlarczyk, Ph.D., also a clinical psychologist, agreed with Dr. Tishler's opinion. (Tr. 248-264).

Lastly, Plaintiff was seen at Northern Kentucky Family Health Center during the period from June, 2005 to June, 2006. Plaintiff initially complained of mid-back pain and stated that muscle relaxers helped his neck a lot. Physical examination indicated tenderness to palpitation of the mid-thoracic spine, but improved movement of the neck. He demonstrated anger, sadness, tearfulness and anxiety during sessions. He complained of hand pain and difficulty sleeping. A referral to Core Behavioral Center and therapist, Karen McMichael resulted from observations that Plaintiff seemed depressed. In April, 2006, Ms. McMichael reported that Plaintiff had an impaired recent and remote memory, that his judgment was also impaired and that his symptoms were serious. Ms. McMichael felt that Plaintiff was of average intelligence. Ms. McMichael felt that Plaintiff's potential for both suicide and violence was low. (Tr. 277-302).

## OPINION

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a

5

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(I), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are

6

awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520©. Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen*, No. 87-6189, slip op. At 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that

7

such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment

8

"significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson v. Secretary of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson*, 735 F.2d at 964; *Kirk*, 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips v. Harris*, 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v.*

9

*Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). However, the mere presence of a mental impairment does not establish entitlement to disability benefits. In order for a claimant to recover benefits, the alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Alleged mental impairments are evaluated under the same sequential analysis as physical

10

impairments. Once the Commissioner determines that a mental impairment exists, he/she must then evaluate the degree of functional loss it causes according to a special procedure. 20 C.F.R. §§ 404.1520a and 416.920a. A standard document, called the Psychiatric Review Technique Form, must be completed at each level of administrative review. This form, which corresponds to the Listing of Impairments for mental impairments, lists the signs, symptoms, and other medical findings which establishes the existence of a mental impairment.

The special procedure then requires a rating of the degree of functional loss resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2) and 416.920a(b)(2). Plaintiff's level of functional limitation is rated in four areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, and pace; and 4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §§ 404.1520a(c)(3)and 416.920a(c)(3); *see Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993)(per curiam). The first three areas are rated on the following five-point scale: none, mild, moderate, marked, and extreme. The fourth is rated on the following four-point scale: none, one or two, three, four or more. If an individual's limitations are rated as "none,"or "mild" in the first three areas and "none" in the fourth area, the mental impairment will normally be found to be not severe. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4)and 416.920a(c)(4).

Where the mental impairment is found to be severe, a determination must then be made as to whether it meets or equals a listed mental disorder. If it does not, the Commissioner must then complete a Mental Residual Functional Capacity Assessment form. This form also seeks to evaluate functional loss; however, it is intended to provide a more detailed analysis than that provided by the Psychiatric Review Technique form. The Commissioner must determine if this mental residual functional capacity is compatible with the performance of the individual's past relevant work, and if not, whether other jobs exist in significant numbers in the economy that are compatible with this assessment. *See* 20 C.F.R. §§ 404.1520(e)-(f), 404.1566(b) and 416.920a(e)-(f), 416.966(b).

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

11

530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). However, a summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano,* No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). However, a physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028

12

(6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

When a plaintiff presents evidence to the Appeals Council but not to the ALJ, ("additional evidence") and the Appeals Council considers the additional evidence but declines to review the plaintiff's claim, the District Court may not consider that additional evidence, unless all the requirements of a remand under sentence six of 42 U.S.C. § 405(g) have been met. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In *Cotton*, the Sixth Circuit adopted the Seventh Circuit's rationale in *Eads v. Secretary of H.H.S.*, 983 F.2d 815 (7th Cir. 1993) that when the Appeals Council declines review, it is the decision of the ALJ and therefore the facts which were before the ALJ that are subject to appellate review. *Cotton*, 2 F.3d at 695-96. In a sentence six remand, the Court does not rule on the correctness of the administrative decision. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 174 (6th Cir. 1994), *citing Melkonyan*, 501 U.S. 89.

The Court may remand a case to the Commissioner for consideration of additional evidence only if the party seeking remand demonstrates that 1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing and 2) this evidence is new and material. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163, 2165 (1991); *Willis v. Secretary of H.H.S.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

To show good cause, the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Oliver v. Secretary of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis*, 727 F.2d at 554.

To be "material" within the meaning of § 405(g), the new evidence 1) must be relevant and probative to plaintiff's condition prior to the Commissioner's decision and 2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver*, 804 F.2d at 966. New evidence on an issue already fully considered by the Commissioner is cumulative, and is not sufficient to warrant remand. *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980); *Thomas v. Schweiker*, 557 F. Supp. 580, 582 (S.D. Ohio 1983)

13

(Spiegel, J.). Evidence that plaintiff's condition has deteriorated since the Commissioner's decision is not material. *Sizemore*, 865 F.2d at 712; *Oliver*, 804 F.2d at 966. If plaintiff has experienced serious deterioration since the Commissioner's decision, the appropriate remedy is to file a new application. *Sizemore*, 865 F.2d at 712.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Although Plaintiff initially complained of back pain, neck pain, hand pain and depression, the ALJ found only the hand pain and depression to be severe and Plaintiff does not contest this

14

point. What he does contest is that the ALL's finding that his severe depression does not render him disabled. In this context, Plaintiff argues that the ALJ should have placed more credibility on the clinical observations and resulting opinion of Dr. Deardorff than on that of paper reviewer, Dr. Trishler.

Substantial evidence supports the accuracy of the diagnosis of major depression. Dr. Shih diagnosed Plaintiff with major depression. Dr. Deardorff, a clinical psychologist, agreed as did Drs. Tishler and Pawlarczyk and therapist, Karen McMichael. There is, however, disagreement among the various medical sources, who have different relationships to Plaintiff. Drs. Tishler and Pawlarczyk are paper reviewers, who neither examined nor treated Plaintiff. Dr. Deardorff is an examining psychologist, who had no treatment relationship with Plaintiff. Dr. Shih is a psychiatrist, however Marissa Shih, listed on Dr. Shih's letterhead, who we suspect is Dr. Shih's wife, daughter or daughter-in-law, is a registered nurse who counsels patients. It appears that the therapy sessions were conducted by Marissa Shih. In any event, Dr. Shih and Ms. McMichael are treating sources.

Dr. Shih noted in May, 2003 that Plaintiff's recent and remote memory was deficient, as well as his insight, judgment and inability to concentrate. The ALJ believed that these deficiencies were self-reported by Plaintiff, rather than clinical observations made by the therapist. We are not at all sure that the ALJ's hypothesis is correct. One month later, Dr. Shih reported that Plaintiff's memory and concentration were intact, although his insight and judgment remained deficient. We can conclude from this that Plaintiff's treatment relationship with Dr. Shih's office was short-term and Plaintiff appeared to be making progress. Karen McMichael found that both Plaintiff's recent and remote memory was impaired as well as his judgment, but that Plaintiff had insight, presumably about the presence of his mental illness and techniques for self-help. It would appear that Karen McMichael saw Plaintiff for approximately one year and was perplexed by her observations of Plaintiff's memory loss, as evidenced by her letter to the prescribing physician asking if he knew of any physical problem which could be the source of such a loss, i.e., a brain injury. Ms. McMichael felt that Plaintiff's symptoms were "serious."

Dr. Deardorff conducted a clinical interview with Plaintiff in July, 2003. Dr. Deardorff's report does not indicate that Plaintiff came armed with any medical records, so we presume that

15

Dr. Deardorff was unaware of any records from any other mental health provider, except for a 1999 psychological evaluation from an unknown source. Dr. Deardorff reported that Plaintiff was a high school graduate, but of low average intelligence. He was depressed and anxious, but not suicidal. Dr. Deardorff found that Plaintiff's primary problems were his memory and inability to concentrate, although Dr. Deardorff found "serious impairments" in all four work-related mental abilities. The ALJ did not place much credence on Dr. Deardorff's report because it was based solely on a clinical interview, with no supportive testing and was in conflict with the MMSE, a mini-mental state examination, wherein Plaintiff scored a "19," which is indicative of moderate and very nearly mild severity with reference to the degree of cognitive impairment. The ALJ also noted some credibility issues with reference to Plaintiff's testimony, such as the fact that Plaintiff had no friends, but a friend drove him to his clinical interview.

On the other hand, Dr. Tishler agreed with what has been established by substantial evidence, and that is that Plaintiff's inability to concentrate was his major functional problem. Dr. Tishler disagreed with the level of seriousness relative to Plaintiff's memory difficulties and he explained his disagreement by citing an example where Plaintiff demonstrated an ability to recall, such as his medical history. Dr. Tishler also felt that Plaintiff's memory was consistent with his full-scale IQ of 78. Dr. Tishler felt that Plaintiff's inability to concentrate and his low IQ would preclude sustaining complex tasks, but that he could perform simple tasks. Dr. Tishler also acknowledged that depressed persons, whose self-image is low by definition, would have difficulty dealing with criticism, but he did not feel that this weakness precluded all forms of employment. Dr. Pawlarczyk agreed.

The ALJ was faced with general agreement among the medical sources as to the proper diagnosis, but disagreement as to the degree of functional limitations resulting from the diagnosis of major depression and no treating source with established credentials and a doctor-patient relationship of any duration. It must also be noted that Plaintiff's major complaint was about his physical impairments, not his psychological status. We are reluctant to disturb the findings of the ALJ who had the occasion to see and hear Plaintiff, rather than make a judgment on a paper record. We cannot find that the ALJ's decision on this issue was erroneous.

The second error was attributed not to the ALJ, but to the Appeals Council, which refused

16

review of the ALJ's decision. After the ALJ's decision in May, 2005, Plaintiff submitted Exhibits AC-1, AC-2 and AC-3, records and a report from North Kentucky Health Centers, Healthpoint Family Care Centers and Karen McMichael. The Appeals Council described these documents as containing "little significant objective findings." To this claim of error, Defendant first argues that Ms. McMichael's letter to Dr. Janardin contains only a question about the cause of Plaintiff's memory loss. The letter contains no opinion relative to the degree of memory loss and no opinion relative to the functional limitations derived from such an impairment. The other two medical reports point to the possibility of carpel tunnel syndrome, rather than a trauma-induced injury to the nerves controlling Plaintiff's hands. We do not know whether Plaintiff's hand problem developed after the ALJ's decision or whether the problem previously existed and grew worse with time. Most significantly, we do not know the functional limitations resulting from Plaintiff's hand problem. We do know that both x-rays and nerve conduction studies failed to show any impairment. We believe it unlikely that had the ALJ considered these documents, his decision would have been any different. Accordingly, the Appeals Council committed no error in refusing to remand Plaintiff's case.

For the above reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of this Court.

September 2, 2008

Timothy S. Hogan
United States Magistrate Judge

17

## NOTICE TO THE PARTIES REGARDING THE FILING OF
## OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).